IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-78-D

| | | |
|---|---|---|
| G. BROOKS BATCHELOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CORNERSTONE BANK, and FEDERAL | ) | |
| DEPOSIT INSURANCE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

On February 1, 2013, G. Brooks Batchelor ("Batchelor"), who is proceeding pro se, filed a complaint against Cornerstone Bank ("Cornerstone") [D.E. 1]. In the complaint, Batchelor alleges breach of contract against Cornerstone arising from Cornerstone's failure to make payments to Batchelor under a separation agreement. Id. 3. On March 12, 2013, Cornerstone moved to dismiss the complaint for lack of federal jurisdiction [D.E. 10] and filed a supporting memorandum [D.E. 11]. On March 29, 2013, Batchelor responded [D.E. 17–18]. On April 12, 2013, Cornerstone replied [D.E. 19]. In response to the motion to dismiss, on April 18, 2013, Batchelor filed a proposed amended complaint that asserts a claim against the Federal Deposit Insurance Corporation ("FDIC") [D.E. 21]. On May 1, 2013, Cornerstone moved to strike, or alternatively, to dismiss the proposed amended complaint [D.E. 26]. On May 3, 2013, the FDIC moved to dismiss, or, alternatively, for summary judgment [D.E. 28] and filed a supporting memorandum and exhibits [D.E. 29–30]. On May 28, 2013, Batchelor responded in opposition to Cornerstone's motion to strike and the FDIC's motion to dismiss [D.E. 33–34]. As explained below, the court grants the motion to amend the complaint, grants the FDIC's motion to dismiss, and declines to exercise supplemental jurisdiction over Batchelor's state-law claim against Cornerstone.

I.

Cornerstone employed Batchelor from 1999 until late 2009. See Separation Agreement [D.E. 1-1] 1. On August 25, 2009, Batchelor tendered his resignation, which Cornerstone accepted. Id. On September 28, 2009, Batchelor asked to withdraw his resignation. Id. Cornerstone disputed whether Batchelor could withdraw the resignation. Id. On November 18, 2009, Batchelor and Cornerstone entered into a Separation Agreement and General Release under which the parties agreed, among other things, that Batchelor's employment would terminate that day, and, in exchange, Cornerstone would pay Batchelor three months' salary ($31,250) as severance payments. Compl. [D.E. 1] 3.

The FDIC determined that the severance payments constituted a "golden parachute" that required FDIC approval before Cornerstone could make any payment. Id. The FDIC did not approve the severance payments, and Cornerstone refused to pay any severance benefit to Batchelor. Id.

Batchelor filed this action and asserts a breach of contract claim against Cornerstone. Id. In his proposed amended complaint, Batchelor seeks to assert a claim against the FDIC "for blocking the 'Severance Payment.'" Am. Compl. [D.E. 21] 2. Cornerstone seeks dismissal of the breach of contract claim for lack of federal subject-matter jurisdiction. The FDIC seeks dismissal for failure to state a claim upon which relief can be granted, or, alternatively, summary judgment.

II.

As for the proposed amended complaint, the court construes Batchelor's pro se pleading as a motion to amend the complaint. Under Rule 15, the court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, absent prejudice, bad faith, or futility of the amendment, the court should grant leave to amend. See United States v. Pittman, 209 F.3d 314, 317

2

(4th Cir. 2000); Island Creek Coal Co. v. Lake Shore, Inc., 832 F.2d 274, 279 (4th Cir. 1987); Davis v. Piper Aircraft Corp., 615 F.2d 606, 613–14 (4th Cir. 1980).

Batchelor seeks to amend the complaint to add a claim against the FDIC. Compare [D.E. 21], with [D.E. 1]. Cornerstone asks the court to strike the proposed amended complaint as futile. In contrast, the FDIC has responded to the substance of Batchelor's new claim. See FDIC Mem. Supp. Mot. Dismiss [D.E. 29] 7–12.

There is a "general policy embodied in the Federal Rules favoring resolution of cases on their merits." Island Creek, 832 F.2d at 279. Thus, the court grants the motion to amend and denies Cornerstone's motion to strike.

As for the FDIC's motion to dismiss under Rule 12(b)(6), a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). However, the court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Id. In considering the motion, the court may consider documents attached to the complaint and documents attached to the motion to dismiss if those documents are integral to the complaint and authentic. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Sec'y of State for Def. v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

In the amended complaint, Batchelor asserts:

> [The FDIC] is prohibiting Cornerstone Bank [from] making the 'severance payment' under the 'Separation Agreement' dated November 18th, 2009. The FDIC is classifying the payment as a 'Golden Parachute' payment . . . . [Batchelor] is . . . suing the FDIC for blocking the 'Severance Payment.' In addition, . . . this payment is NOT a 'Golden Parachute' . . . .

Am. Compl. [D.E. 21] 2. Essentially, Batchelor makes two claims against the FDIC. First, Batchelor asserts that the FDIC tortiously interfered with Batchelor's contract with Cornerstone when he states that he is "suing the FDIC for blocking the 'Severance Payment.'" See United Labs., Inc. v. Kuykendall, 335 N.C. 183, 190–91, 437 S.E.2d 374, 379 (1993). Second, Batchelor contends that the FDIC incorrectly concluded that the severance payment allegedly owed under the severance agreement constitutes a prohibited golden parachute payment.

As for the tortious interference claim, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994). The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, generally waives sovereign immunity with respect to tort actions against the United States in federal court, but qualifies the waiver with numerous exceptions. See 28 U.S.C. § 2680; Millbrook v. United States, 133 S. Ct. 1441, 1443 (2013); Holbrook v. United States, 673 F.3d 341, 345 (4th Cir. 2012). Where an exception applies, sovereign immunity bars the claim. Moreover, one exception includes a claim for damages "arising out of . . . interference with contract rights." 28 U.S.C. § 2680(h); see Millbrook, 133 S. Ct. at 1443; Ignacio v. United States, 674 F.3d 252, 253 (4th Cir. 2012); Ready Transp., Inc. v. Military Traffic Mgmt. Command, 86 F. App'x 561, 565–66 (4th Cir. 2004) (per curiam) (unpublished). Accordingly, to the extent Batchelor seeks damages from the FDIC based on tortious interference with contract, sovereign immunity bars his claim. See § 2680(h); Ready Transp., 86 F. App'x at 565–66; Audio Odyssey, Ltd. v. United States, 255 F.3d 512, 522 (8th Cir.

4

2001); Davric Me. Corp. v. U.S. Postal Serv., 238 F.3d 58, 61, 64 (1st Cir. 2001); Cooper v. Am. Auto. Ins. Co., 978 F.2d 602, 613 (10th Cir. 1992); Chen v. United States, 854 F.2d 622, 628 n.2 (2d Cir. 1988).

To the extent Batchelor seeks injunctive relief against the FDIC, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, governs the claim. The APA provides that a "person suffering legal wrong because of agency action . . . is entitled to judicial review thereof" and waives sovereign immunity for claims "seeking relief other than money damages." 5 U.S.C. § 702; see Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 260–61 (1999); Madison v. Virginia, 474 F.3d 118, 131 (4th Cir. 2006); Food Town Stores, Inc. v. EEOC, 708 F.2d 920, 922 (4th Cir. 1983).[1] In reviewing the FDIC's decision, this court must defer to the agency unless it finds the decision to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see N.C. Growers' Ass'n, Inc. v. United Farm Workers, 702 F.3d 755, 763–64 (4th Cir. 2012); Doolin Sec. Sav. Bank, F.S.B. v. FDIC, 53 F.3d 1395, 1404 (4th Cir. 1995). "Review under this standard is highly deferential, with a presumption in favor of finding the agency action valid." Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009). "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quotation omitted); Almy v. Sebelius, 679 F.3d 297, 302 (4th Cir. 2012). When an agency action is challenged, "[t]he entire case on review is a question of law, and only a question of law." Marshall Cnty. Health Care Auth. v.

---

[1] The APA limits review to "action[s] made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The parties agree that the FDIC's April 16, 2012 determination that the severance payments constitute a golden parachute [D.E. 30-9] is a reviewable "final agency action."

5

Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993); Klock v. Kappos, 731 F. Supp. 2d 461, 465 (E.D. Va. 2010). Thus, the court may consider the administrative record without converting the motion to one for summary judgment. Marshall Cnty., 988 F.2d at 1226; Klock, 731 F. Supp. 2d at 465.

Batchelor essentially argues that the FDIC erred in concluding that the severance payments constituted a golden parachute rather than an excepted "nondiscriminatory severance pay plan." Am. Compl. 2. The court disagrees with Batchelor.

The FDIC has statutory authority to "prohibit or limit, by regulation or order, any golden parachute." 12 U.S.C. § 1828(k)(1). Section 1828(k)(2) directs the FDIC to "prescribe, by regulation, the factors to be considered by the [FDIC] in taking any action" under section 1828(k)(1). Pursuant to this statutory authority, the FDIC promulgated regulations governing golden parachute payments to a bank officer or employee (referred to as an "institution-affiliated party," or "IAP"). The FDIC's definition of golden parachutes materially duplicates the statutory definition. Compare 12 C.F.R. § 359.1(f), with 12 U.S.C. § 1828(k)(4). The term "golden parachute" includes

> [1] any payment . . . by an insured depository institution . . . for the benefit of any current or former IAP . . . that . . . [2] is payable on or after[] the termination of such party's primary employment or affiliation with the institution . . . ; and [3] [i]s received on or after . . . [a] determination by the [FDIC] that the insured depository institution . . . is in a troubled condition . . . .

12 C.F.R. § 359.1(f). Section 359.1 specifically excludes from the definition of golden parachute any payment made under a "nondiscriminatory severance pay plan . . . which provides for payment of severance benefits to all eligible employees upon involuntary termination other than for cause, voluntary resignation, or early retirement." Id. § 359.1(f)(2)(V). "Nondiscriminatory means that the . . . contract . . . applies to all employees of an insured depository institution . . . who meet reasonable and customary eligibility requirements applicable to all employees . . . ." Id. § 359.1(j).

The FDIC found that the severance payments Batchelor seeks constitute a golden parachute

6

payment because they meet the criteria of section 359.1(f). In particular, the FDIC found that (1) the bank proposed making payments to Batchelor (2) in connection with the termination of Batchelor's employment, as settlement for any claims resulting from Batchelor's termination, (3) after the FDIC notified Cornerstone that it was in a troubled condition. See [D.E. 30-9] 1–2. The FDIC also found that none of the exceptions in section 359.1(f)(2) applied. Id. 2.

Batchelor contends that the severance payment is a "nondiscriminatory severance pay plan" excluded from the definition of golden parachute. Am. Compl. 2; see 12 C.F.R. § 359.1(f)(2)(V). A "nondiscriminatory severance pay plan" is one that "provides for payment of severance benefits to all eligible employees upon involuntary termination" and that "applies to all employees of an insured depository institution . . . who meet reasonable and customary eligibility requirements." 12 C.F.R. § 359.1(f)(2)(V), (j). Before concluding that no exception under section 359.1(f)(2) applied, the FDIC noted that the payment was due under a settlement agreement made "to avoid anticipated costs of litigation." [D.E. 30-9] 2. Therefore, the severance payment Batchelor seeks was not due upon "involuntary termination" and was not available "to all employees." Thus, the FDIC "examine[d] the relevant data and articulate[d] a satisfactory explanation" for concluding that the payment Batchelor seeks is a golden parachute rather than an excepted nondiscriminatory severance pay plan. See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43. Accordingly, the FDIC's decision was not arbitrary and capricious, and the court defers to the FDIC's determination.

The regulations prohibit an insured depository institution from making a golden parachute payment unless the FDIC approves the payment. See 12 C.F.R. § 359.2. To the extent that Batchelor challenges the FDIC's denial of approval for the golden parachute payment, the FDIC's consideration of such payments is governed by 12 C.F.R. §§ 303.244 and 359.4. See § 303.244(a)(1). Section 303.244 requires an insured bank seeking to make a golden parachute

7

payment to apply to the FDIC regional director for approval of the payment and to provide:

> (1) The reasons why the applicant seeks to make the payment;
> (2) An identification of the institution-affiliated party who will receive the payment;
> (3) A copy of any contract or agreement regarding the subject matter of the filing;
> (4) The cost of the proposed payment and its impact on the institution's capital and earnings;
> (5) The reasons why the consent to the payment should be granted; and
> (6) Certification and documentation as to each of the points cited in § 359.4(a)(4).

§ 303.244(b)–(c). The FDIC may request additional information. § 303.244(d). Among other things, section 359.4(a)(4) requires the insured bank to certify that "it does not possess and is not aware of any information, evidence, documents[,] or other materials which would indicate that there is a reasonable basis to believe . . . that . . . [t]he IAP is substantially responsible for . . . the troubled condition" of the bank. § 359.4(a)(4)(ii).

On December 8, 2009, Cornerstone applied to the FDIC seeking approval for the payments described in the Separation Agreement and General Release. Dujenski Decl. [D.E. 30] ¶ 4. Noting that the application was incomplete, the FDIC asked Cornerstone on December 21, 2009, to provide additional information, including the certifications and documentation required by sections 303.244(c)(6) and 359.4(a)(4). Id. ¶ 5; see [D.E. 30-1]. On January 5, 2010, Cornerstone responded and made the required certifications, but did not provide supporting information. Dujenski Decl. ¶ 6; see [D.E. 30-2]. In letters dated October 15, 2010 and December 13, 2010, the FDIC requested supporting information for the section 359.4(a)(4) certifications, and then closed the file because the bank was nonresponsive. Dujenski Decl. ¶ 6; see [D.E. 30-7, 30-10].

After the FDIC provided guidance to Cornerstone regarding golden parachute applications, Cornerstone filed a second application on October 24, 2011. Dujenski Decl. ¶¶ 7–8; see [D.E. 30-6]. However, in the second application, Cornerstone indicated that Batchelor may be substantially responsible for the troubled condition of the bank, and that Cornerstone could not make the required

8

certifications. Dujenski Decl. ¶ 8; see [D.E. 30-6] ¶ 7.

In its April 16, 2012 decision letter, the FDIC denied Cornerstone's application because Cornerstone failed to certify that Batchelor was not substantially responsible for the bank's troubled condition, as required by sections 303.244(c)(6) and 359.4(a)(4)(ii). Dujenski Decl. ¶ 9; [D.E. 30-9] 2, 4–5. The FDIC's decision letter also discusses Batchelor's role at Cornerstone and his involvement in loans that led to the bank's troubled condition, and concludes that "Batchelor is consider[ed] to be, in part, responsible for the bank's troubled condition." [D.E. 30-9] 4–5.

The administrative record reflects that the FDIC followed the procedure prescribed by section 303.244 and reached a reasoned decision to disallow any golden parachute payments to Batchelor. In particular, Cornerstone's failure to provide the certification required by section 359.4(a)(4)(ii) provided sufficient justification to deny the payments. Accordingly, the FDIC's decision was not arbitrary and capricious, and the court defers to the FDIC's determination.

In opposition to this conclusion, Batchelor argues that the FDIC ignored relevant information in determining that he was substantially responsible for the bank's troubled condition. See Pl.'s Resp. Opp. Mot. Dismiss [D.E. 34] 1–2, 7. However, as discussed, the FDIC followed the procedure in section 303.244 and denied Cornerstone's application for approval of the severance payments because Cornerstone failed to certify that it lacked a reasonable basis to believe that Batchelor was substantially responsible for the bank's troubled condition. The additional information that Batchelor references is irrelevant to his claim against the FDIC. Simply put, the FDIC was bound by its regulations to deny Cornerstone's application whether or not it considered such information. See 12 C.F.R. §§ 303.244(c)(6), 359.4(a)(4)(ii). Furthermore, although Batchelor asserts that the FDIC should have "force[d] the bank to produce the required information," Pl.'s Resp. Opp. Mot. Dismiss 7, section 303.244 puts the burden on the applicant, not the FDIC, to produce the required

9

certification and supporting documentation. Accordingly, Batchelor fails to state a claim against the FDIC upon which relief can be granted, and the court grants the FDIC's motion to dismiss.

Only Batchelor's state-law contract claim against Cornerstone remains. Thus, the court lacks federal question jurisdiction over this case. See 28 U.S.C. § 1331.[2] Because Batchelor and Cornerstone are both North Carolina citizens, and the amount in controversy is less than $75,000, the court lacks diversity jurisdiction. See 28 U.S.C. § 1332(a); Clark v. Velsicol Chem. Corp., 944 F.2d 196, 197 (4th Cir. 1991). Moreover, the court declines to exercise supplemental jurisdiction over Batchelor's state-law claim against Cornerstone. See 28 U.S.C. § 1367(c)(3). Accordingly, the court dismisses the remaining claim without prejudice.

III.

In sum, the court GRANTS Batchelor's motion to amend the complaint [D.E. 21] and GRANTS the FDIC's motion to dismiss [D.E. 28]. Furthermore, the court DENIES Cornerstone's motion to strike [D.E. 26], DECLINES to exercise supplemental jurisdiction over Batchelor's state-law claim against Cornerstone, DISMISSES the state-law claim against Cornerstone without prejudice, and DISMISSES as moot Cornerstone's motions to dismiss [D.E. 10, 26].

SO ORDERED. This 19 day of September 2013.

JAMES C. DEVER III
Chief United States District Judge

---

[2] Under the well-pleaded complaint rule, Cornerstone's anticipated defense that the FDIC barred the severance payment does not raise a substantial federal question. See, e.g., Caterpillar Inc. v. Williams, 482 U.S. 386, 392–93 (1987); In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 584 (4th Cir. 2006).